# Deen & Schoch *versus* Herrold.

*Damages defalked for Breach of Warranty.—Equity of Obligor as against Assignee of Bill Single.*

1. The Supreme Court will not reverse where an improper question has been asked in the trial of a cause, if the answer cannot harm the party objecting; nor for the admission of improper testimony, unless injury may have resulted from the ruling of the court; nor for the omission of the court below to charge specifically, unless asked by counsel to charge as they suppose the law to be.

2. Where a machine is guarantied to perform well for three months, and defects occur within that time, the warrantee can defalk damages on the contract, without proof of notice, within the three months.

3. The obligor in a single bill, with warrant of attorney, is not precluded from setting up a defence against it in the hands of an assignee, unless estopped by admitting to such assignee that he has no defence, or by encouraging him to purchase. Inquiry from strangers by the assignee, or their declarations as to the object of the bill, will not avail.

ERROR to the Common Pleas of *Snyder county*.

This was a feigned issue directed in the name of Dean & Schoch for the use of Nelson Byers, executor of William Byers, against William S. Herrold, by the Common Pleas of Snyder county, for the purpose of trying whether the consideration of a judgment entered in that court, to May Term 1857, No. 60, "had not, in whole or in part, failed; and, if in part only, what amount the plaintiff was entitled to recover; and, also, whether the matter alleged as a failure of the consideration, had not been settled by the parties, before the confession of the judgment." The judgment and the note upon which it was entered, were considered as the plaintiff's declaration, to which the court directed the plea

[Dean & Schoch v. Herrold.]

of payment with leave, &c., and the replication of *non solvit*, to be entered: and on the issue thus made up, the case was tried.

Dean & Schoch, who were foundry-men, contracted, in writing, with Herrold to build a steam-engine of a certain power (describing it particularly), and to deliver the same within ninety days from the date of the agreement, and set it up, ready for running, within eight days after delivery. The engine was to be made in a good, workmanlike manner, and *warranted to "run right and do her proper work, for the term of three months, upon condition that she is properly taken care of."*

The price of the engine was to be paid in the following manner, to wit: $300 at the execution of the agreement; $300 in sixty days thereafter; $600 on the day the engine is started; and the remaining $600 in five months thereafter—for which Herrold was to give his note, with the discount added, payable at "The Bank of Northumberland."

The first payment was made as per agreement; the second was arranged to the satisfaction of the parties; and, on the 3d of June, before the other payments were due, Herrold gave the judgment in controversy, to Dean & Schoch, for $1200, payable six months after date, with interest.

This was done to enable Dean & Schoch to raise the funds necessary to finish and set up the engine.

The judgment was entered up on the 6th of June 1857, in the name of Dean & Schoch. On the 29th of June 1857, it was purchased by William Byers (now deceased), without calling on Mr. Herrold, but relying on the assurance of George Hill, Esq. (to whom he was referred), that it was all right.

About the 8th of July 1857, the engine was set up, and some repairs were made to it by Dean & Schoch; but after this, it appears, no notice of any kind was given to them by Herrold.

On the 7th of April 1858, in reply to a demand from Byers, for the money due on the judgment, Herrold requested further time.

Byers died about the latter part of April 1858, having made a will in which he named his son, Nelson Byers, as his executor.

In January 1859, Nelson Byers demanded this money of Herrold, who replied, January 15th 1859, that he would pay it at the May court. This promise was repeated in another letter, dated January 23d 1859, and also, verbally, from time to time (without claiming any deduction or set-off), until a *fi. fa.* was issued against him, to February Term 1860, to collect the money due on the judgment, for the use of Nelson Byers, executor of William Byers, deceased.

Advised by counsel that his right to make defence, was not affected by the transfer of the judgment to Byers, and averring

[Dean & Schoch *v.* Herrold.]

that the engine was defectively constructed, Herrold made application to Judge Menges to stay the writ.    On the 26th of March 1859, a rule was granted to open the judgment, which was made absolute by the court, and the feigned issue ordered as above stated.

On the trial, a great number of exceptions were taken to the ruling of the court, in admitting or rejecting evidence; and also to the general charge and answers given to the points submitted by counsel.

The jury found a verdict in favour of plaintiff for $900, and, judgment being entered thereon, the plaintiff removed the case to this court.

The errors assigned were numerous, and many of them were not adverted to in the argument.    All, however, that were deemed important are noticed in the opinion of the court.

*Charles Hoover* and *G. F. Miller*, for plaintiff in error (who was also plaintiff below), contended:—That the court erred in rejecting James F. Dean when offered as a witness.    His appearance on the record as a party plaintiff is a matter of form, and not of substance : the real party is Nelson Byers, executor of William Byers.    Dean gave no guarantee when he transferred the judgment to Byers, and should not appear on the record on the feigned issue :  Pepper *v.* Barrington, 9 Legal Journ. 50 ; Byers *v.* Two Trustees of the Presbyterian Congregation of Blossburg, 9 Casey 114.

If the defendant intended to claim damages on account of any defect in the engine, he should have given notice to plaintiff within the three months mentioned in the agreement : North-Western Insurance Co. *v.* The Phœnix Oil and Candle Co., 7 Casey 448.

The jury were allowed to assess speculative damages by the erroneous admission of evidence respecting the loss of power in conveying the steam (as it was done in this engine), the length of time the mill stood still, when the plumber block broke, &c., and by refusing to instruct the jury that, as between the original parties to the judgment, the only deduction which the defendant could claim would be the difference between a perfect and imperfect engine :  Frankenfield *v.* Freyman, 1 Harris 56.

The defendant was estopped, by his acts and declarations, from setting up failure of consideration as a defence against the equitable plaintiff :  Carnes *v.* Fields and Harlan, 2 Yeates 541 ; McMullin *v.* Wenner, 16 S. & R. 18 ;  Decker, for the use, *v.* Eisenhower and Bowlander, 1 Pa. Rep. 476 ;  Lewis *v.* Carstairs, 5 W. & S. 209 ;  Carr *v.* Wallace, 7 Watts 394 ;  Crowell *v.* McConkey, 5 Barr 176 ;  Pelletrean *v.* Jackson, 11 Wendell 117 ; Com. *v.* Melty, 10 Barr 530 ;  Stephens *v.* Baird, 9 Cow. 274 ;

Denny v. Field, 5 Metc. 381; Cong. v. Williams, 9 Wend. 147; Pickard v. Sears, 6 A. & E. 469; Gregg v. Wells, 2 P. & D. 296; 10 A. & E. 90 and 437.

*A. C. Simpson* and *J. Slenker* (with whom was *C. Morril*), for the defendant in error.—Dean was incompetent as a witness. He was liable on the warranty, he was a party on the record, and was interested: Barly v. Knapp, 7 Harris 192; Post v. Avery, 5 W. & S. 509; Harding v. Mott, 8 Harris 459; Hatz v. Snyder, 2 Casey 511.

The instruction of the court complained of, was as favourable as the other side could expect. The engine could not well be returned for repairs, and the court refused to say that it was, although they did say that, if parts of the engine were defective, it was the duty of Herrold to notify Dean & Schoch of the fact, that they might have an opportunity to repair it. The case in 7 Casey 448, is not in point.

As to the measure of damages, the rule is, that the delinquent shall answer for all injury which results from the immediate and direct breach of his agreement, and this was the instruction of the court.

As to the alleged estoppel, they cited Frantz v. Brown, 1 P. Rep. 262; Ludwick v. Croll, 2 Yeates 464.

The opinion of the court was delivered, October 17th 1860, by

THOMPSON, J.—There are very many exceptions in this case, both to the ruling of the court in admitting evidence, and to the charge in answer to points. Whatever apology there may be for multiplying exceptions on account of want of time for consideration, during the trial of causes at bar, it is hardly so excusable after opportunity for reflection afforded in the preparation of the case for review. It is hardly to be supposed that a court will be in error a dozen and a half of times in one case! It should be the study of counsel to concentrate their forces to an attack on vulnerable points, such as they are well persuaded are so, and not waste their energies in uncertain enterprises. This course will be found less troublesome to counsel and court, and much more effective in arriving at logical and just results. These remarks are not intended as a reflection on the able counsel in this case, but to be applicable in all such cases as the present.

We shall notice but few of the numerous assignments of error on this record, for in most of them we cannot discover any ground for error or suspicion of error.

The exception founded on the permitted question to Hickcock as to how long the mill stood idle on account of defects in the

[Dean & Schoch *v.* Herrold.]

machinery, did the defendant no harm, for he answered that he did not know.

We never reverse unless injury may have possibly occurred from the ruling of the court; certainly we never do where there is an entire failure to introduce the proposed erroneous testimony.

The measure of damages appropriate in such a case as this, was not invaded by this abortive offer, and hence even if the question were improper, it resulted in no injury.

Nor do we perceive any room for complaint of the instruction on the subject of the measure of damages. The court said, " but the recovery will be subject to a deduction in damages conse-quent on the imperfections complained of, if such imperfections are sustained by the evidence." This was intelligible and proper. If the plaintiffs thought it did not go far enough, they cannot now complain, for it was their duty to have asked a charge upon the law as they supposed it to be. Without this, an omission is not error for which we can, as a general thing, reverse.

There was no error either in allowing the jury to make a deduction in damages for defects proving themselves within the three months during which the machine was guarantied to per-form well, although notice of defects was not given within that time. There was no contract obligation on Herrold to give such notice. The understanding was a positive one on the part of Dean & Schoch that it should perform well, and it was their place to see to it that it did so, or to bargain for notice of defects, if any existed. This they did not do, and it was enough for the defendant to show on the trial the deficiency of the engine within the three months, to entitle him to a defalcation of damages. He was not bound to give notice before. But in fact he did so by returning parts of the machinery for alteration and repair within the time. The court committed no error in their dealing with this part of the case.

Nor was there any error in permitting the jury to deduct damages for defects, under the circumstances of the case. The form of the obligation on which the judgment was entered, was that of a single bill with warrant of attorney to confess judgment thereon. This, without more, was just the case for a defence for failure or partial failure of consideration, or for a deduction in damages for defects. And the defendant could not be precluded from making such a defence, unless he had estopped himself by admitting to the purchaser that he had no defence, or by en-couraging him to invest his money in a purchase of the security. This was not pretended. Nor was it pretended that the assignee ever inquired of him as to any defence he might have. He therefore took the risk upon himself.

That the note or bill was intended as a means of raising money between the original parties is most likely; but in the absence of

[Dean & Schoch *v.* Herrold.]

anything on the face of the paper, showing it to be a contract with the buyer to be answerable to him as an original party, and in the absence of all inquiry as to any defence, his right of defalcation to the extent of his damages remains.

The evidence on this branch of the case does not estop Herrold. It was information from strangers as to the object of the single bill. But the obligor did not bind himself, either in the bond or outside of it, not to set up any equitable defence he might have when it should fall due. He cannot be precluded in this but by some act of his own. Where is there such act? It is not in the form of the instrument, nor in a confession to the assignee, nor to anybody making inquiry for him, that he would not gainsay the obligation. The assignee could see that the day of payment was six months ahead, and if he was informed that it was to raise money to enable the obligors to perform their contract with the obligee, it should have occurred to him to inquire before he took an assignment whether there would be any defence to it for want of performance. If he had done so, he would most likely have been informed of the guarantee, and further that the period of three months, during which the guarantee would continue, would elapse before the note would fall due, and thus he might learn the liability there was of the judgment being imperilled by defective performance. But he neglected precautions, and took the risk on himself, and we cannot relieve him from the consequences. As we see no error in the record, the judgment is affirmed.